This is Advanced Ambulatory Surgical Center v. The Department of Public Health. May it please the Court, Counsel. Your Honors, I appreciate this opportunity. I think I have about two and a half minutes, and that's it. This is really a jurisdictional matter. Plaintiff is a surgery center located in Chicago. Defendant is the Illinois Health Facilities Planning Board. I'll refer to it as the board. Before a surgery center can be built in Illinois, a permit, known as a Certificate of Need permit, must be received from the board. Developers of the surgery center sought, applied for, and obtained the CON permit. They eventually built the surgery center. There was a lawsuit after the permit was issued that delayed construction. Both the state board and the surgery center was named as defendants. But this delayed the actual completion. Eventually, though, the project was completed and the facility was licensed May 4, 2000. Seven and a half years later, the board brought an administrative action against the surgery center alleging and proposing a fine of $85,000 claiming that there had been a failure to report certain information back to the board in 2000 and 2002. The surgery center entered a limited appearance administratively to contest jurisdiction and that process was stayed while we filed an action in the circuit court here in Sangamon County. Dueling motions were filed for summary judgment. The Sangamon County court ruled in favor of the board surgery center appeal. The seminal case is the Marion Hospital Corporation case versus the Planning Board, that's the Supreme Court case. And there the board, the Supreme Court said that the board does not have oversight of facilities once they're built and once they become licensed. The oversight in the board's authority ends upon licensure. Now, we would say Marion stands for the proposition that the matter is now moved. The CON permits are only valid for the Supreme Court until the facility is built and licensed and then it's over. Presumably, the board could have objected theoretically back in 1999 and 2000 to try to prevent the original licensure. They didn't do that. The board has lost jurisdiction, it lost it back in 2000 when it failed to object the state licensure. So this is really kind of a narrow issue in our view. It's not real complicated. We think that the Marion case, the Supreme Court case, answers all the questions on that. I think the, I'll just finish with, if the board, if the court has any questions, I'm happy to answer them. I don't see any. Thank you. Mr. Schmidt. Thank you very much, Your Honor, and may it please the court and counsel. I think the main thing we have is a disagreement about Marion Hospital. We believe that deals with a very, very different situation. The board is not trying here to do anything that would affect the surgical center's operations. They are licensed to operate. The board's not trying to attack that license to operate. The board is seeking, pending a hearing, to impose a fine for violation of permit conditions and for allegedly failing to provide some information that the board requested. Section 14.1 of the Planning Act gives the board authority to do that. It does not limit that authority by saying that it expires when the permit itself expires. What the Marion Hospital Court had before it was a different situation. It was one where a competitor, and competitors of parties who seek permits to open a new facility or to expand a facility to the board, then they object. In Marion Hospital, a competitor objected, but was held by the circuit court not to have standing. The appellate court upheld that, or the appellate court, I believe, reversed. But, at that time, the facility had already been built and licensed to operate. What the Supreme Court said was that the validity of the permit itself, questions relating to the propriety of granting the permit itself, and to the expenditure of the funds removed. They had already been spent. And you couldn't, in that situation, unring the bell. The facility had been completed already. Doesn't this address the propriety of an expenditure, though? Yes, it does, but the distinction here, Your Honor, what they were attacking in Marion Hospital was the propriety of the approved expenditure. Right, I understand. They're saying the board should not have approved it. Correct, but Provena says the propriety of the expenditure. And really, the underlying question here is, why did you spend extra money? The answer is interest. And then, well, you didn't report that to us, so we're gonna fine you, or you didn't follow the administrative procedure. That relates to the propriety of the dollars expended? Well, it does, but Marion Hospital, again, was really, the question there was, should the expenditure have been approved in the first place? Should the facility itself have been approved? And that's, we're not saying that, well, it did not involve a violation of a permit condition. It involved attacking the permit itself. And the language from Marion Hospital makes it clear that they're talking about the propriety of the approved expenditure. In other words, the party, the competitor in that case, was trying to get the approval of the expenditure reversed, but it was too late. That expenditure had already been made. If the surgical center had sent the board a letter saying, hey, we just got sued, and we've got a delay in construction because of the lawsuit, and we're gonna incur some extra interest expense, then everything would have been hunky-dory, right? No, what they would have had to do in that situation, and this is provided in the board's regulations, they, if the permit, if they're going to exceed the permit amount by 7% or less, they have to get approval for that. If they're going to exceed it by more than 7%, they actually have to get a new permit. So it wouldn't have been okay, even if they had the best reason in the world, they have to go back before the board and get approval. Again, if it's less than 7%, they can just seek to have that condition altered. But if it's going to be greater than 7%, they have to get a new permit. Well, this is less than 7%. This is more. More? This is actually more, Your Honor. It's about roughly 12.6%. So they would have been required to ask for and get a new permit. Would they have been given a new permit? I understand that's conjecture, but- It is conjecture. But on this set of facts. I would think there's a good chance, yes. Just a chance? I can't- How do you control litigation? And the board was sued also. Well- They were a companion party to the case, so they knew about it. Well, yes, it was an administrator review complaint. Well, but they knew that it was ongoing. The complaint delayed the whole process. If there's a delay in the process, there's going to be interest income. Yes. So the board would know, more likely than not, that would be the case. The board wouldn't be surprised. So, you really mean to suggest there'd only be a chance they would be given a new permit? Well, I would think, okay. Ah, but the question is whether common sense would prevail. We don't have an answer to that. Well, no, I think as long as the additional expenses weren't, as long as they were able to show that they were able to handle the additional expenses. Sure. I think that's, there's a concern here. The board wants, part of the reason that they have this process is to make sure the projects they're approving don't involve untoward expenses. That might possibly make the permit holder go under or possibly just, generally, there's an interest in trying to keep down the cost of healthcare. And that's part of why the board gets involved in looking over the financial situation of these permit applicants. So, I can't honestly say 100% what the board would do, but certainly, they would take that into account. So, we believe that Marion Hospital really deals with a different situation. And it doesn't address the situation. And here, the language of section 14.1 of the Planning Act does give the board authority to impose a fine even after the permit has expired. And I think if the court were to rule otherwise, there would be potential absurd results. The plan language of the statute doesn't impose any such limitation. And the potential absurd result would be, in this situation, the board only found out about the violation when Advanced Ambulatory submitted a report of their final costs, which they are required to submit. But they did that on May 8, 2000, which is four days after they were licensed. So, their argument, in effect, is, you didn't catch us before, and perhaps could not have caught us before the permit expired. So, therefore, we walk. And there's another potential violation, and this is not something they're guilty of, but it just illustrates, I think, the absurdity of imposing this type of limitation. A permit holder could violate the act by not submitting that report of final costs at all. That would be a violation, but that, by necessity, would be after the project was completed and after they were licensed. So, the board could never enforce that. And I think the court should not read in a limitation to section 14.1 that the legislature didn't place there for that reason as well. I think it would create some absurd results that should be avoided. The advanced ambulatory also raises a latches argument, but that's something that would have to be raised before the board in the first instance. Their argument attacking the board's jurisdiction was properly before the circuit court. That falls under an exception to the exhaustion of administrative remedies doctrine, which exists when an agency's jurisdiction is attacked. But latches is not a jurisdictional matter. Latches is an equitable defense. And so, they must present that before the board in the first instance, and then they have,  is created before the board. And, well, one other thing I'll just mention, I had mentioned a regulation requiring the permit holder to seek board permission for an alteration of a permit condition. That's at 77 Illinois Administrative Code, section 1130.750C, and that only permits alteration if it's less than 7% of the cost, as I've mentioned. If it's more than that, they would have had to seek a new permit again, even if they had a great reason for it. The board was sued as well, right? Your co-defendants. Yes, they were named it. It was an administrative review complaint, so the board had to be named too. Right, so the board would have known, would they not, that there was a delay in construction because of this litigation? Not necessarily, because the fact that there's an admin review action pending doesn't always delay construction. We don't know from this record, and I'm not sure if there was any stay in this matter. And they did go ahead, and they apparently obtained the construction loan knowing that the litigation was going on. So I believe they were aware of this litigation. I think by the time the loan finally came through, or by the time it came through, the circuit court had already dismissed it, but then it went up to the first district appellate court. Where it was pending for a while. But the notion that an administrative review action necessarily delays construction, not so. And the Marion Hospital case is a great example of that. The construction went ahead there, and that's really what mooted the case. Of course, they're risking that they would be, have the permit revoked, or not get licensed after expending all the funds to build the place, and then what kind of a position are they in? So if they'd lost the lawsuit, but they continued construction while the lawsuit was pending. There's no question, Your Honor, that would be a risk. If they felt that their position was strong, some litigants like the one in Marion Hospital did go ahead. But no, I think that's right. I think that it would be a risky undertaking. They're damned if they do, and they're damned if they don't, under your theory. You know, if they went ahead and built it, they might not get the permit for it. If they halt construction and run up extra interest costs, they run the risk of being fined. Well, I'm not trying to say what they should do in this situation. I'm not trying to suggest that at all. But if they do run up interest costs, they have to go back to the board. That's what I am suggesting. And that is what the statute and what the board's regulations do require. And I think I'm done, if there are no further questions.  Thanks very much, Your Honors. Mr. Butler? I think one minute. They commented about Section 14.1. 14.1, first, I think I might have been, and I should have known this before walking in here, adopted later, so after the fact. But regardless, it applies to permit holders. 14.1, even their brief mentions that fines may be imposed against a permit holder. That's a CON permit holder, which advanced is not. Advanced has no permit at this point. That ended when the project was completed. So that's important for this court to understand. Number two is this talk about they didn't know what was going on or they would have had to have done that. On page eight of our written brief, on July 13th, the administrator and the CEO came in, it's all under the transcript, it's in the record at 282 and 282 to 305. They explained all this. The board said, we understand it, the record at 267, we understood the reasons for the overrun because they were part of the action. And on the transcript, they said, we defer and refer, you'll be hearing from our staff. That was in 2000, then nothing. There was apparently a letter in the file in 2002, but nothing until 2007. So they may have the ability to fine a permit holder. Advanced is not a permit holder. And again, it's a jurisdictional issue, just like whether they could issue a fine against the local McDonald's. McDonald's isn't a permit holder, so they don't have any authority over McDonald's. Thank you. I'm happy to answer any questions. Thank you. Thank you. We'll stand in recess until the readiness of the next meeting.